UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELANIE DENMAN, an individual,

        Plaintiffs,

vs.

ZAYO GROUP, LLC, a Delaware corporation,

        Defendant.

Case No. 2:13-cv-00190RSM

ORDER ON MOTION TO DISMISS

## INTRODUCTION

Plaintiff Melanie Denman has filed the present action against defendant Zayo Group, LLC. In addition to its answer and affirmative defenses, defendant has asserted counterclaims against plaintiff. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

The matter is now before the Court for consideration of plaintiff's Rule 12(b)(6) motion to dismiss most of defendant's counterclaims for failure to state a claim. Dkt. #12. Plaintiff has properly filed this motion before filing an answer to the counterclaims. FED.R.CIV.P. 12(b)(6). Defendant has opposed the motion. Dkt. # 14. After careful consideration of defendant's counterclaims, the parties' memoranda, and the remainder of the record, the Court has determined that the motion shall be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff filed her complaint in the Superior Court of the State of Washington for King County. Dkt. #1. Defendant then removed the action to this Court as provided by 28 U.S.C. §

ORDER - 1

1441 on the basis of 28 U.S.C. § 1332 diversity jurisdiction. *Id.*

In October 2011, defendant announced that it would acquire 360network holdings (USA) inc. ("360network"), plaintiff's employer at the time. Dkt. #5, ¶ 3.1. Subsequently, defendant offered plaintiff a position as a senior manager of human resources that was to terminate on or before March 1, 2012. *Id.* At this point, the parties' narratives diverge, but it is clear that a dispute developed concerning the handling of employee benefits and other human resources matters during the period following defendant's acquisition of 360network. As a result, defendant terminated plaintiff's employment on February 1, 2012. *Id.* at ¶ 3.15. Plaintiff then filed suit in King County Superior Court, alleging breach of contract and withholding of wages. Dkt. #1, Exhibit 1, ¶¶ 4.2-4.4.

Defendant then removed the action to this court and, in addition to defending against plaintiff's claims, asserted counterclaims related to her alleged negligent and willful mishandling of her employment-related duties. Dkt. #1; Dkt. #5, ¶¶ 3.1-5.6. Specifically, defendant alleges that plaintiff: (1) did not cancel 360network's employee healthcare coverage effective December 1, 2011 as directed, but instead cancelled it effective December 31, 2011, obliging defendant to cover the costs incurred, (2) without authorization, responded to an audit request from Travelers Insurance, resulting in the disclosure of information and defendant incurring additional costs, and (3) failed to accurately report her time off. Dkt. #5, ¶¶ 2.5, 2.17, 2.32. Defendant asserted theories of recovery based on breach of fiduciary duty and the duty of loyalty, conversion and misappropriation, and negligence. *Id.* at 3.1-5.6. Plaintiff now asks this Court to dismiss all counterclaims except those based on negligence for failure to state a claim. Dkt. #12.

DISCUSSION

**I. Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a claimant to provide a short and plain statement showing entitlement to relief such that the opposing party has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

ORDER - 2

545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Claims failing to meet this standard must be dismissed. FED. R. CIV .P. 12(b)(6).

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts all facts alleged in the Complaint as true, even if doubtful in fact, and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth" and are not considered by this Court on a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The ultimate inquiry is whether the non-moving party has alleged sufficient facts to state a claim for relief that is "plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the pleadings contain "factual content that allows the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This is more stringent than a "probability requirement," and a complaint that only "pleads facts that are merely consistent with a defendant's liability" will not survive a 12(b)(6) motion. *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks removed). Indeed, where there is an "obvious alternative explanation" for the conduct alleged, the complaint should be dismissed. *Id.* at 682 (internal citations omitted).

**II. Analysis**

Plaintiff contends dismissal of defendant's claims premised on breach of a fiduciary duty, specifically breach of the duty of loyalty, is appropriate as defendant has failed to allege facts sufficient to establish a relationship giving rise to such duties under Washington law. Plaintiff also moves to dismiss defendant's conversion and misappropriation claims due to failure to allege that plaintiff, respectively, willfully interfered with defendant's property and accessed or obtained information she was not entitled to see. This Court shall grant plaintiff's motion to dismiss in part and deny it in part.

*A. Breach of Fiduciary Duty and Duty of Loyalty (Counterclaim 1)*

Fiduciary duties can be grounded in either statutory or common law. The defendant does not specify which ground they rely upon, but since notice pleading, not code pleading, is the standard under Rule 8, this Court will examine each theory to determine if the defendant has alleged facts sufficient to support a fiduciary duty claim under either theory. *See Iqbal*, 556 U.S. at 678-79; *see also* Charles E. Clark, *The Complaint in Code Pleading*, 35 YALE L.J. 259, 280-85 (1926).

Fiduciary duties an employee owes to a corporate entity by virtue of the corporate relationship are governed by the law of the state of incorporation. The allegations in the counterclaim cover both plaintiff's employment with 360network and her subsequent employment with defendant. Dkt. #5, ¶ 3.3-3.4. Defendant is a Delaware limited liability company, *id.* at 1.2 and 360network, prior to its acquisition, was a Nevada corporation, Domestic Section 214 Application Filed for the Transfer of Control of 360Networks Holdings (USA) Inc. and 360Networks (USA) Corp. to Zayo Group, LLC, 26 FCC Rcd. 15065 (Oct. 24, 2011). Therefore, this Court will look to Delaware and Nevada corporate law to determine whether they recognize a fiduciary duty plaintiff owed to defendant.

The Nevada Corporate Statute provides for fiduciary duties directors and officers owe to the corporation, including the duty of loyalty. NEV. REV. STAT. § 78.138(7)(b); *see also In re Amerco Derivative Lit.*, 252 P.3d 681, 701 (Nev. 2011) (citing NEV. REV. STAT. § 78.138(7)(b)). Nevada law requires that officers "must be chosen in such manner … as may be prescribed by the bylaws or determined by the board of directors." NEV. REV. STAT. § 78.130(3). Defendant has not alleged that plaintiff's position with 360network falls under either heading. Nor has Nevada extended such fiduciary duties beyond directors and officers to management level employees, *see Amerco*, 252 P.3d at 701(discussing liability for directors and officers), a lacuna noted by at least one other court, *Scalzi v. City of N. Las Vegas*, No. 2:08-cv-01399-MMD-VCF, 2013 WL 758353, at *7 (D. Nev. Feb. 26, 2013). Defendant has therefore not raised any facts to suggest that plaintiff owed fiduciary duties to 360network under Nevada corporate law.

ORDER - 4

The Delaware Limited Liability Company Act appears to presuppose that certain individuals will owe fiduciary duties to a limited liability company ("LLC"), but is silent on the question of which individuals owe such duties.  *See* DEL. CODE ANN. tit. 6, § 18-1101(C); *see also Auriga Capital Corp. v. Gatz Properties, LLC*, 40 A.3d 839, 849 (Del. Ch. 2012), *aff'd sub nom. Gatz Properties, LLC v. Auriga Capital Corp.,* 59 A.3d 1206 (Del. 2012).  The Delaware Supreme Court has not ruled on the question of what, if any, default fiduciary duties apply in the LLC context and to whom they apply.  *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 660 (Del. Ch. 2012) (citing *Gatz*, 59 A.3d at 1218-19).  However, the chancery courts have extensively and persuasively analyzed this question and have reached the conclusion, analogizing to corporations and partnerships that not every employee of an LLC owes default fiduciary duties, but only those "vested with discretionary power to manage the business of the LLC." *Id.* at 659-663 (quoting *Auriga*, 40 A.3d at 850-51) (internal quotation marks removed); *Auriga*, 40 A.3d at 849-856.  This includes managers and managing members, but not passive members, and by implication, other employees. *See Feeley*, 62 A.3d at 662-63.  Here, defendant has not alleged that plaintiff had the status of a manager or managing member of the LLC, nor that she had any position with similar status and "discretionary power" such that she owed default fiduciary duties under Delaware LLC law.  *See id.* at 661.

Of course, this only means that defendant has not alleged facts sufficient to plausibly claim that plaintiff owed either 360network or defendant fiduciary duties as a direct result of the nature of her position, respectively, with the corporate or LLC entity.  Washington common law also provides for fiduciary duties that can arise on a case-by-case basis depending on the parties' relationship.  *Liebergesell v. Evans*, 613 P.2d 1170, 1176 (Wash. 1980).  In other words, even if the contours of plaintiff's job description did not create default fiduciary duties vis-à-vis the relevant corporate entity, the working nature of the relationship may have created a fiduciary relationship in certain situations.

"Fiduciary relationships include those historically regarded as fiduciary" and can also occur when the party claiming the benefits of a fiduciary relationship can "show some

ORDER - 5

dependency on his or her part and some undertaking by the [burdened party] to advise counsel and protect the weaker party." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 634 (Wash. Ct. App. 1997). There is no evidence to indicate that plaintiff falls into the former category.

Regarding the latter, fact-based category, the only evidence provided by defendant is that plaintiff was an employee who had access to confidential information. Dkt. # 5, ¶ 3.3; *see also* Dkt. #14, 6. However, none of the evidence indicates a relationship of "peculiar confidence" or that plaintiff was acting "primarily for the benefit of" defendant to the exclusion of her own interests. *See Goodyear*, 935 P.2d at 634 (quoting *Denison State Bank v. Madiera*, 640 P.2d 1235, 1241 (Kan. 1982)); *see also Moon v. Phipps*, 411 P.2d 157, 160 (Wash. 1966) ("A simple reposing of trust and confidence in the integrity of another does not alone make of the latter a fiduciary."). None of the facts presented indicate any special dependency defendant had on plaintiff's services, such that it was factually similar to that of an attorney-client or doctor-patient relationship. *See, e.g.*, *Liebergesell*, 613 P.2d at 1176 (superior knowledge of financial advisor can create fiduciary relationship). In fact, the evidence defendant provides indicates the opposite: that plaintiff had a limited and well-circumscribed role within the organization, was subject to the oversight of others, and could be fired on little notice. Dkt. #5, ¶¶ 3.15 (answer), 2.3-2.4, 2.11, 2.15, 2.18 (counterclaims). If the evidence presented were sufficient to presume a fiduciary relationship, then one would have to presume that all management level employees owe fiduciary duties, contrary to the default rules of many states, including Washington. *See* Wash. Rev. Code §§ 23B.08.400-420 (describing fiduciary duties and which officers they apply to). Therefore, defendant has not alleged facts sufficient to make the claim that plaintiff was a fiduciary and violated her fiduciary duties "plausible on its face," and the "obvious alternative explanation" is that she was a regular, management-level employee, who owed no fiduciary duties to defendant. *See Iqbal*, 556 U.S. at 678, 682 (quoting *Twombly*, 550 U.S. at 570).

    *B. Conversion (Counterclaim 2)*

ORDER - 6

    Defendant also claims that by failing to follow directives and "exercising improper dominion and control over matters that exceeded her authority" plaintiff converted defendant's property. Dkt. #5, ¶¶ 4.2-4.3. Under Washington law, conversion is defined as "the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham and Kolde*, 106 P.3d 212, 218 (Wash. 2005) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 910 P.2d 1308, 1320 (Wash. Ct. App. 1996)) (internal quotation marks omitted). Money is treated "as a chattel only if the defendant wrongfully received the money or was under an obligation to return the specific money to the party claiming it." *Davenport v. Wash. Educ. Ass'n*, 197 P.3d 686, 695 (Wash. Ct. App. 2008) (quoting *Pub. Utility Dist. No. 1 of Lewis Cnty v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985) (en banc)) (internal quotation marks omitted). Here, it is not contended that plaintiff actually received any money, so any claim for conversion must rest upon the latter ground. As the case law makes clear, diverting a source of funds to an unintended purpose can support a conversion claim. *E.g.*, *Maynard Inv. Co. v. McCann*, 465 P.2d 657, 662 (Wash. 1970) (contractor committed conversion when he used funds provided to pay for labor to repay creditors instead); *Westview Inv., Ltd. v. U.S. Bank Nat. Ass'n*, 138 P.3d 638, 646 (Wash. Ct. App. 2006) (allegation that bank improperly used funds held in trust is sufficient for conversion claim to survive summary judgment).

    Defendant has alleged sufficient facts to state a claim for conversion against plaintiff. Defendant claims that plaintiff committed acts, namely approving an audit and extending healthcare benefits, without authorization that caused defendant to incur additional expenses in the amount of at least $210,000. Dkt. #5, ¶¶ 4.2-4.4. In both cases, defendant has alleged that plaintiff signed approvals for payment, in essence diverting defendant's funds to an unintended purpose. *Id.* at ¶¶ 2.11, 2.22. As alleged by defendant, plaintiff's actions were unjustified and deprived defendant of its funds. *See Marriage of Langham*, 106 P.3d at 218. Plaintiff claims that defendant has failed to allege sufficient facts to show "willful interference," that the interference concerned property, and that plaintiff never took possession of or asserted a

ORDER - 7

property right over the funds. Dkt. # 12, 8-10; Dkt. # 15, 7-8. Regarding the last contention, the tort of conversion does not require that the party committing the tort take possession or assert a property right over the chattel, only that they interfere such that the aggrieved party is deprived of possession. *Marriage of Langham*, 106 P.3d at 218. The second point, that the facts alleged could not amount to conversion because it involved money, not property, has already been rejected by Washington courts. *Davenport*, 197 P.3d at 695; *Westview Inv.*, 138 P.3d at 646 ("[t]here is nothing in the nature of money making it an improper subject of" conversion if certain conditions are met) (quoting *Davin*, 262 P at 125 ) (internal quotation marks removed and alteration in original).

Plaintiff's contention that defendant has failed to allege facts that the interference, if any, was not "willful" is without merit. "[N]either good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action [in conversion]." *Marriage of Langham*, 106 P.3d at 216 (quoting *Judkins v. Sadler-MacNeil*, 376 P.2d 837, 838 (Wash. 1962) (internal quotation marks removed) (second alternation in original). "Wrongful intent is not a necessary element of conversion, and good faith cannot be shown as a defense to conversion." *Paris Am.Corp. v. McCausland*, 759 P.2d 1210, 1215 (Wash. Ct. App. 1988) (citing *Clapp v. Johnson*, 57 P.2d 1235 (Wash. 1936). The term "willful interference" is therefore directed at the intent to perform the action that results in conversion, not at the intent to commit the tort of conversion. Defendant has alleged facts sufficient to indicate that plaintiff may have performed actions that resulted in a conversion, and therefore has plead facts sufficient to state a counterclaim for conversion.

*C. Misappropriation (Counterclaim 2)*

As part of its second counterclaim, defendant also alleges that plaintiff committed the tort of misappropriation. Specifically, defendant claims that plaintiff's handling of the audit and employee files constituted misappropriation of confidential information. Dkt. # 14, 10. As an initial matter, defendant's citation to *United States v. O'Hagan*, 521 U.S. 642 (1997) for the misappropriation standard is inapposite. Dkt. #14, n.35. The test outlined in *O'Hagan* is one

created for securities fraud liability in violation of § 10(b) of the Securities Exchange Act. 521 U.S. at 652. Where insider trading is concerned, a broad reach for a theory of misappropriation, encompassing all nonpublic information, is appropriate because it coincides with the Securities and Exchange Commission's regulations concerning insider trading, 17 C.F.R. § 240.14e-3(a) (2013) (impermissible to engage in tender offer when in possession of "nonpublic" information), and because any risk of too expansive a reach is tempered by scienter requirements not applicable in the tort context, *O'Hagan*, 521 U.S. at 665-66 ("Vital to our decision that criminal liability may be sustained under the misappropriation theory, we emphasize, are two sturdy safeguards Congress has provided regarding scienter.").

The correct approach is to look to Washington law for a definition of the tort of misappropriation. Washington provides a statutory definition of misappropriation as acquisition or "disclosure or use of a trade secret … ." WASH. REV. CODE § 19.108.010(2). To qualify as a trade secret, the information disclosed must, *inter alia*, "derive[] independent economic value … from not being generally known to … other persons who can obtain economic value from its disclosure or use" and have been "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* at § 19.108.010(4).

Here, defendant has provided no facts to make it "plausible on its face" that the information allegedly disclosed constituted trade secrets, and, therefore, defendant fails to state a claim for statutory misappropriation. *See Iqbal*, 556 U.S. at 687. The complaint only indicates two instances where plaintiff may have disclosed information: (1) "Denman failed to remove certain executive compensation from the payroll calculations" in responding to the audit request and (2) plaintiff "[gave] away employee files in violation of Zayo policy." Dkt. # 5, ¶¶ 2.20.3, 2.34. Defendant fails to allege any facts that may indicate that either type of information was subject to efforts "to maintain its secrecy" or that economic value could be derived from their disclosure. *See* WASH. REV. CODE § 19.108.010(4); *see also Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 944 (Wash. 1999) (customer lists are not trade secrets if the information is readily ascertainable); *Evergreen Moneysource Mortg. Co. v. Shannon*, 274 P.3d

375, 386 (Wash. Ct. App. 2012) (denying motion to amend complaint to allege misappropriation because it was "doubtful" that list of documents including "orders, numerous declarations, and memoranda" constituted trade secrets without more).  Therefore, defendant has failed to state a claim for statutory misappropriation.

However, the Washington courts have held that the statutory cause for misappropriation has not displaced the common-law action for misappropriation when trade secrets are not involved.  *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 673-74 (Wash. 1987).  "A confidential relationship alone is enough to prohibit disclosure." *Id.* at 674 (citing *Island Air, Inc. v. LaBar*, 566 P.2d 972 (1977).  The term "confidential relationship" is not defined in *Boeing* or other Washington cases dealing with common-law misappropriation, but in other contexts the term has been used as the equivalent of a fiduciary relationship.  At the very least, Washington cases show that it requires a stronger relationship than the employee-employer relationship alleged by defendant.  *See, e.g.*, *State v. A.N.J.*, 225 P.3d 956, 967 (Wash. 2010) (failure to form confidential relationship with client undermined attorney/client relationship); *In re Estate of Jones*, 287 P.3d 610, 615 (Wash. Ct. App. 2012) ("A confidential relationship exists when one person has gained the confidence of the other and purports to act or advise with the other person's interest in mind" and "may give rise to a rebuttable presumption of undue influence."); *In re Melter*, 273 P.3d 991, 998 (Wash. Ct. App. 2012) (when confidential relationship exists, evidence must be shown that gift was given voluntarily for it to be upheld); *In re Estate of Bussler*, 247 P.3d 821, 830 (Wash. Ct. App. 2011) ("fiduciary or confidential relationship between the testator and the beneficiary" may raise question of undue influence).  Since defendant has not alleged facts pertaining to the existence of a fiduciary relationship as discussed above, defendant has therefore also failed to allege facts sufficient to allege a confidential relationship.  As a result, defendant has failed to state a claim for common-law misappropriation or breach of a confidential relationship.

ORDER - 10

## CONCLUSION

Plaintiff's motion to dismiss for failure to state a claim is GRANTED as to defendant's counterclaims of breach of the duty of loyalty (Counterclaim 1) and misappropriation (Counterclaim 2) and these claims are DISMISSED with leave to amend. The motion is DENIED as to defendant's claim of conversion (Counterclaim 2).

DATED this 22nd day of July 2013.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 11